**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **TITAN LOGISTICS GROUP LLC,** *et al.*, | ) | Case No.   3:26-cv-01300 |
| | ) | |
| **Plaintiffs,** | ) | Judge   _____ |
| | ) | |
| **-vs-** | ) | **PLAINTIFFS' MOTION FOR** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| **BETH TISCHLER,** *et al.*, | ) | **AND INJUNCTION** |
| | ) | |
| **Defendants.** | ) | Andrew R. Mayle (0075622) |
| | ) | MAYLE LLC |
| | ) | P.O. Box 263 |
| | ) | Perrysburg, Ohio 43552 |
| | ) | Telephone:     (419) 334-8377 |
| | ) | Facsimile:     (419) 355-9698 |
| | ) | Email:          amayle@maylelaw.com |
| | ) | |
| | ) | Gregory H. Wagoner (0076132) |
| | ) | Nicholas T. Stack (0086333) |
| | ) | SHUMAKER, LOOP & KENDRICK, LLP |
| | ) | 1000 Jackson Street |
| | ) | Toledo, Ohio 43604 |
| | ) | Telephone:     (419) 241-9000 |
| | ) | Facsimile:     (419) 241-6894 |
| | ) | E-Mail:         gwagoner@shumaker.com |
| | ) | nstack@shumaker.com |
| | ) | |
| | ) | *Attorneys for Plaintiffs* |

\*          \*          \*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................................. 5

    A.   The 2018 Farm Bill and the Federal Legalization of Hemp ............................................... 5

    B.   Ohio's Regulatory Background and the Effect of S.B. 56.................................................... 6

    C.   S.B. 56's Discriminatory Effect on Interstate Commerce .................................................. 6

    D.   Plaintiffs' Injuries ............................................................................................................... 7

    E.   Prior Judicial Action .......................................................................................................... 8

III.  LEGAL STANDARD........................................................................................................ 8

IV.  ARGUMENT..................................................................................................................... 9

    A.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ..................................... 9

        a.   The redefinition of "hemp" in S.B. 56, in combination with Ohio's penal code and immunity statutes favoring in-state licensees, violates the Dormant Commerce Clause. ...... 9

        b.   Both facially and in practical effect, Ohio law would now Discriminate against interstate commerce as-applied to hemp-derived products that are otherwise federally lawful. ............................................................................................................................ 10

        c.   One Ohio court has already found a likelihood of success on this ............................... 13

        d.   A federal court in New Jersey enjoined a materially analogous scheme...................... 13

        e.   Less restrictive alternatives exist. ............................................................................... 14

    B.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF. ............................................................................................................................... 16

    C.   THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR. .............................. 17

    D.   THE PUBLIC INTEREST SUPPORTS INJUNCTIVE RELIEF. .................................. 17

    E.   DEFENDANT CLASS CERTIFICATION IS APPROPRIATE .................................... 18

    F.   VI. THE SCOPE OF INJUNCTIVE RELIEF ................................................................ 19

V.   CONCLUSION................................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akron Ctr. For Reproductive Health v. Rosen*,
 110 F.R.D. 576 (N.D. Ohio 1986) .......................................................................................18

*Butler v. Hotel California, Inc.*,
 106 F. Supp. 3d 899 (N.D. Ohio 2015)...................................................................................8

*C & A Carbone, Inc. v. Town of Clarkstown*,
 511 U.S. 383 (1994)...............................................................................................................3

*Chabad of S. Ohio & Congregation Lubavitch v. Cincinnati*,
 363 F.3d 427 (6th Cir. 2004) ...............................................................................................17

*In re DeLorean Motor Co.*,
 755 F.2d 1223 (6th Cir. 1985) ...............................................................................................9

*Granholm v. Heald*,
 544 U.S. 460 (2005)............................................................................................................3, 12

*Hignell-Stark v. City of New Orleans*,
 46 F.4th 317 (5th Cir. 2022) ..................................................................................................7

*Hughes v. Oklahoma*,
 441 U.S. 322 (1979)...............................................................................................................3

*Loki Brands, LLC v. Platkin*,
 No. 24-9389, 2024 WL 4457485 (D.N.J. Oct. 10, 2024) ............................................... *passim*

*Natl. Pork Producers Council v. Ross*,
 598 U.S. 356 (2023)...............................................................................................................3

*North Fork Distrib. I, LLC v. Wensinger*,
 No. 26CV312, Decision and Order Granting Plaintiff's Motion for
 Preliminary Injunction in Part (Ohio Ct. Common Pleas, Sandusky Cty. May
 14, 2026) ...............................................................................................................................13

*North Fork Distrib.*,
 May 14, 2026 Order........................................................................................................14, 16

*North Fork Distribution I, LLC v. Derek Weisinger, et al.*,
 Case No. 26-CV-312, Decision and Order Granting Plaintiff's Motion for
 Preliminary Injunction in Part (May 14, 2026)..................................................................5, 13

*Oregon Waste Systems, Inc. v. Dept. of Environmental Quality of State of Or.*,
　511 U.S. 93 (1994)..................................................................................................2, 10

*Pike v. Bruce Church, Inc.*,
　397 U.S. 137 (1970)...................................................................................................12

*S.-Cent. Timber Dev., Inc. v. Wunnicke*,
　467 U.S. 82 (1984).......................................................................................................9

*State v. Donoho*,
　2018-Ohio-4950 (11th Dist.) ....................................................................................11

*Tennessee Wine & Spirits Retailers Assn v. Thomas*,
　588 U.S. ...................................................................................................................3, 4

*Vitolo v. Guzman*,
　999 F.3d 353 (6th Cir. 2021) ..........................................................................9, 16, 17

**Statutes**

7 U.S.C. § 1639o...........................................................................................................5, 6

21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17) ................................................................5

42 U.S.C. § 1983........................................................................................................9, 15

Agriculture Improvement Act Of 2018.........................................................................5

Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 ..............5

Farm Bill ................................................................................................................ *passim*

Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 10114(b), 132 Stat.
　4914 (2018)...............................................................................................................14

Ohio's Controlled Substances Act ...............................................................................11

R.C. 928.01 ...............................................................................................................6, 11

R.C. 928.01(C)..........................................................................................................6, 11

R.C. 2925.03 .............................................................................................................6, 11

R.C. 2925.11 .............................................................................................................6, 11

R.C. 3719.01(M).......................................................................................................6, 11

R.C. 3796.05(B)(1).......................................................................................................11

R.C. 3796.18(A)................................................................................................................11

R.C. 3796.19(A)(1) ..........................................................................................................12

R.C. 3796.22(A)(1) ..........................................................................................................11

**Other Authorities**

Fourteenth Amendment .......................................................................................................9

Constitution of the United States ......................................................................................15

Fed. R. Civ. P. 65..........................................................................................................1, 8

Fed. R. Civ. P. 23(b)(2)...................................................................................................18

Ohio Administrative Code 3796:6-1-01(E) ......................................................................11

Ohio Administrative Code 3796:6-3-01(C)......................................................................11

Ohio Administrative Code 3796:6-6-3-02(A) ..................................................................11

Ohio Senate Bill 56...................................................................................................1, 4, 19

U.S .Const., Art. I, Sec. 8, Cl. 3 ....................................................................................3, 9

## MOTION FOR TEMPORARY RESTRAINING AND INJUNCTION

Plaintiffs Titan Logistics Group LLC d/b/a 420 Beverage and Your Highness, Hopportunity Holding Company LLC, Saucy Seltzer LLC, App Girls LLC, d/b/a Appalachian Girls, Modern Distribution, LLC, Grayscale Brewing, LLC, d/b/a Niche Beverage, IHC Investments, Inc., d/b/a The Hemp Collect, Know Naturals LLC, d/b/a Slightly Elevated, Precision Fill and Pack LLC, d/b/a Mellow Fellow, and JSZN LLC, d/b/a Muffins ("Muffins")

Modern Distribution, LLC d/b/a Gas Boys and Happy Camper; App Girls LLC d/b/a Appalachian Girls;; Saucy Seltzer LLC; Gold Spectrum CBD LLC; Cornbread CBD, PBC; Grayscale Brewing, LLC d/b/a Niche Beverage; IHC Investments, Inc. d/b/a The Hemp Collect; Know Naturals LLC d/b/a Slightly Elevated; Devine Wellness, LLC; TPFN LLC d/b/a Terpfusion; and Mulkern Ventures, LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, respectfully move this Court for an emergency temporary restraining order ("TRO") pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, and thereafter a preliminary injunction pursuant to Rule 65(a), enjoining Defendants and all persons acting in concert with them from enforcing the challenged provisions of Ohio Senate Bill 56 ("S.B. 56") against Plaintiffs and their products, employees, distributors, retailers, and customers.

## I.   INTRODUCTION

America's national economy could not exist if individual States could discriminatorily obstruct the interstate flow of otherwise federally lawful goods. Under current federal law, hemp and hemp-derived products are federally *lawful* products. This is due to Congress' decision in the 2018 Farm Bill to define "hemp" and remove products – such as Plaintiffs' hemp products – falling within that definition from the reach of the federal penal code. Thus, hemp-derived products may be sold across state lines unless a state has a neutral ban on a particular hemp product. However,

if a state discriminates against hemp-derived products manufactured in another state, then the second state may retaliate against the first state's exports, triggering a civil trade war. As detailed below, the Ohio statutory scheme at issue would reserve Ohio's market for **hemp**-derived products – a market in which Plaintiffs **lawfully** participate on a national scale under current federal law – for approximately 200 in-state, Ohio **marijuana** dispensaries. This is a classic dormant Commerce Clause violation.

As will be shown, Ohio dispensaries must, as a condition of licensure, maintain a physical presence in Ohio and may sell only products containing ingredients grown and processed in this State. Thus, Ohio conditions market access on maintaining an in-state physical presence. The practical effect is to deny market access to firms (like Plaintiffs) that either do not establish a physical presence in Ohio or depend upon hemp-derived products manufactured out of state. This scheme, therefore, burdens out-of-state economic interests while conferring a substantial competitive advantage upon Ohio's incumbent, in-state licensees.

This is discrimination. "As we use the term here, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually per se invalid." *Oregon Waste Systems, Inc. v. Dept. of Environmental Quality of State of Or.*, 511 U.S. 93, 99 (1994). Because it is inherently discriminatory, the disputed Ohio scheme runs afoul of constitutional limitations on state authority. Ohio's scheme also turns congressional policy on its head.

In the 2018 Farm Bill, Congress chose to legalize "hemp," as defined by federal law, while continuing to prohibit marijuana. By contrast, the Ohio General Assembly would now subject federally lawful hemp products to a regulatory regime that benefits a favored class of in-state marijuana licensees. This is per se unconstitutional:

2

in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. This rule is essential to the foundations of the Union. The mere fact of nonresidence should not foreclose a producer in one State from access to markets in other States.

*Granholm v. Heald*, 544 U.S. 460, 472 (2005).

And the fact that the favored class – roughly 200 dispensaries – is relatively small, makes the protectionist effects "more acute." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 392 (1994). Relatedly, the Supreme Court has explained that, while some cases involve state laws that discriminate on their face, "a law's practical effects may also disclose the presence of a discriminatory purpose." *Natl. Pork Producers Council v. Ross*, 598 U.S. 356 (2023). Indeed, as observed in *Natl. Pork Producers*, a law's practical effects may "smoke out" a hidden protectionism.

\*　　\*　　\*

"Under the Articles of Confederation, States notoriously obstructed the interstate shipment of goods. Interference with the arteries of commerce was cutting off the very life-blood of the nation." *Tennessee Wine & Spirits Retailers Assn v. Thomas*, 588 U.S. at 515-516, (cleaned up). Thus, the Founders called a Constitutional Convention to address this. They granted Congress the sole power "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes" U.S .Const., Art. I, Sec. 8, Cl. 3. This is the Commerce Clause.

Its wording "reflected a central concern of the Framers that was an immediate reason for calling the Constitutional Convention: the conviction that in order to succeed, the new Union would have to avoid the tendencies toward economic Balkanization that had plagued relations among the Colonies and later among the States under the Articles of Confederation." *Hughes v.*

*Oklahoma*, 441 U.S. 322, 325 (1979). In fact, the Framers were so keen on negating State obstructionism that adoption of the Commerce Clause was key to ratification as a whole:

> Under the Articles of Confederation, States notoriously obstructed the interstate shipment of goods. Interference with the arteries of commerce was cutting off the very life-blood of the nation. The Annapolis Convention of 1786 was convened to address this critical problem, and it culminated in a call for the Philadelphia Convention that framed the Constitution in the summer of 1787. At that Convention, discussion of the power to regulate interstate commerce was almost uniformly linked to the removal of state trade barriers, and when the Constitution was sent to the state conventions, fostering free trade among the States was prominently cited as a reason for ratification. In The Federalist No. 7, Hamilton argued that state protectionism could lead to conflict among the States, and in No. 11, he touted the benefits of a free national market. In The Federalist No. 42, Madison sounded a similar theme.

*Tennessee Wine & Spirits*, 588 U.S. at 515-516, (cleaned up).

Because there is no currently legal national market for marijuana, states may arguably discriminatorily obstruct the flow of marijuana products. However, this is not true of products that are federally lawful, including hemp and hemp-derived products.

Because the combination of (1) recently enacted Senate Bill 56, (2) Ohio's preexisting penal statutes, and (3) Ohio's preexisting immunity statutes favoring in-state marijuana firms, Ohio law would now have the practical effect of imposing an unconstitutional, state-based barrier to interstate commerce with respect to federally lawful hemp products. Thus, this Court should issue a TRO immediately and thereafter convert that order into a preliminary injunction prohibiting enforcement of Ohio's discriminatory regime against Plaintiffs.

Plaintiffs in this case make hemp beverages and other hemp-derived products and sell them throughout Ohio and nationally. They cannot do so presently in Ohio, however, without risking being considered marijuana traffickers pursuant to S.B. 56, which purportedly took effect on March 20, 2026. Thus, absent immediate relief, Plaintiffs face, at minimum, felony marijuana possession and trafficking prosecutions in Ohio – even though the substances at issue are federally

4

legal products that Plaintiffs regularly sell in interstate commerce. Notably, the Sandusky County Court of Common Pleas has already granted a preliminary injunction on substantially identical claims brought by a similarly situated hemp manufacturer, finding a likelihood of success on the merits of the dormant Commerce Clause claim. *North Fork Distribution I, LLC v. Derek Weisinger, et al.*, Case No. 26-CV-312, Decision and Order Granting Plaintiff's Motion for Preliminary Injunction in Part (May 14, 2026). This Court should do the same.

## II.  STATEMENT OF FACTS

### A.  The 2018 Farm Bill and the Federal Legalization of Hemp

In 2018, Congress passed and President Trump signed the Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 (the "Farm Bill"), which legalized the possession, cultivation, and interstate commerce of hemp. *See* 21 U.S.C. §§ 802(16)(B), 812 sched. I(c)(17).

Because hemp and marijuana are different varieties of the same plant, the Farm Bill uses the concentration of delta-9 THC to set a threshold distinguishing the two. As defined by the Farm Bill, hemp includes any part of "the plant Cannabis sativa L. and … all derivatives, extracts, [and] cannabinoids … whether growing or not," with a delta-9 THC concentration of no more than 0.3 percent on a dry weight basis. 7 U.S.C. § 1639o(1).

The Farm Bill further provides an express preemption provision protecting the interstate commerce of hemp:

> (a) RULE OF CONSTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp … or hemp products.
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with [federal law] through the State or the territory of the Indian Tribe, as applicable.

AGRICULTURE IMPROVEMENT ACT OF 2018, PL 115-334, § 10114 (codified at 7 U.S.C. § 1639o note). This federal statutory exclusion operates as a bright-line rule: cannabis meeting the

federal hemp definition is not a controlled substance, while cannabis exceeding that threshold remains classified as marijuana under Schedule I.

### B. Ohio's Regulatory Background and the Effect of S.B. 56

Prior to S.B. 56, Ohio's definition of hemp mirrored the federal definition. Former R.C. 928.01(C) defined "hemp" as *Cannabis sativa L.* with a delta-9 THC concentration of not more than three-tenths percent on a dry weight basis – identical to 7 U.S.C. § 1639o. Because "marihuana" under R.C. 3719.01(M) expressly excludes "hemp" as defined in R.C. 928.01, prior to S.B. 56, hemp products (as defined under Federal Law) were not "marihuana" and their sale was not criminally sanctionable.

S.B. 56 fundamentally altered this framework. The bill narrowed the definition of "hemp" through a series of sweeping exclusions under newly amended R.C. 928.01(C), such that products meeting the federal definition of hemp now fall outside Ohio's definition and are reclassified as "marihuana" under Ohio law. As contemporaneously recognized by the Legislative Services Commission, S.B. 56 "requires products that fall outside the scope of the new narrowed hemp definition to be considered marijuana and sold exclusively in marijuana dispensaries."

### C. S.B. 56's Discriminatory Effect on Interstate Commerce

The reclassification has devastating consequences for companies without a physical presence in Ohio, and companies that depend upon hemp products from outside Ohio, like several of the Plaintiffs. Once their products or raw inputs qualify as "marihuana" under Ohio law, they become subject to criminal prohibitions on possession and trafficking under R.C. 2925.03 and R.C. 2925.11. The only avenue to lawful market participation is through Ohio's three-tiered, closed-loop marijuana licensing system – which requires an in-state physical presence. In other words, no out-of-state companies are permitted to sell hemp in Ohio.

6

Ohio's marijuana regulatory framework requires cultivation, processing, and dispensing licenses tied to fixed Ohio facilities and currently issues no new licenses. There are approximately 204 licensed dispensaries in Ohio and the window to obtain a license is closed. S.B. 56 gives Plaintiffs' entire market in Ohio to those dispensaries and gives the cultivators and processors in the dispensaries' supply chain a similar exclusive right to cultivate and process federally legal hemp. This eliminates all out-of-state competition and most in-state competition. As noted above, the fact that Ohio law favors a small number of firms within Ohio's closed-loop supply chain – and, thus, discriminates against in-state firms that fall outside that closed-loop system – makes the discriminatory effects more acute.  Stated differently, the fact that Ohio law would also ban in-state firms lacking a dispensary license from selling federally lawful hemp products does not diminish the dormant Commerce Clause problem inherent in excluding all firms without an in-state presence:

> As the Supreme Court has repeatedly held, [laws] that discriminate against interstate commerce are not valid simply because they also discriminate against intrastate commerce.

*Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 327 (5th Cir. 2022).

The practical effect is stark: the moment Plaintiffs' out-of-state, federally legal hemp products cross Ohio's borders, Plaintiffs and their owners, employees, and business partners are subject to controlled-substance prosecutions for possessing or selling Ohio "marihuana," whereas the favored, in-state class of licensees is conditionally immune from prosecution so long as they stay inside the close-loop supply chain.

### D.  Plaintiffs' Injuries

Prior to S.B. 56's passage, Plaintiffs shipped, sold, and distributed hemp-derived products throughout Ohio and had substantial inventory and contractual obligations tied to those sales.

Plaintiffs marketed their products throughout Ohio and would seek to increase their business in this market but for S.B. 56. Plaintiffs have made substantial investments in infrastructure and physical equipment in Ohio that cannot be readily liquidated.

Plaintiffs include companies based in North Carolina, Tennessee, Kentucky, Oregon, South Carolina, Massachusetts, and Ohio itself – all of whom are foreclosed from the Ohio market under S.B. 56.

### E.  Prior Judicial Action

On May 14, 2026, the Sandusky County Court of Common Pleas granted a preliminary injunction on behalf of North Fork Distribution I, LLC d/b/a Cycling Frog – a hemp producer in a substantially identical posture. The court found that "Plaintiff has made a sufficient showing of likelihood of success" on its dormant Commerce Clause claim and that the combined practical effect of S.B. 56's reclassification, the resulting criminal consequences, and Ohio's licensure/immunity structure "may function as a market-access condition rather than a neutral product-safety rule alone."

## III.    LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A).

When considering a motion for a preliminary injunction, courts in the Sixth Circuit weigh four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm absent an injunction; (3) whether an injunction will unjustifiably harm other parties; and (4) whether an injunction will serve the public interest. *Butler v. Hotel*

8

*California, Inc.*, 106 F. Supp. 3d 899, 904 (N.D. Ohio 2015). "[T]he four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

But "[i]n constitutional cases, the first factor is typically dispositive." *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021). "That's because '[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed.'" *Id.* (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). And because "no cognizable harm results from stopping unconstitutional conduct, so 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Id.* (quoting *Déjà vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson Cty.*, 274 F.3d 377, 400 (6th Cir. 2001)). Accordingly, this Court's analysis should begin – and largely end – with the merits.

## IV.    ARGUMENT

### A.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs bring claims under the dormant Commerce Clause, the Supremacy Clause, the Due Process Clause of the Fourteenth Amendment, and 42 U.S.C. § 1983. Each claim independently supports a finding of likelihood of success.

#### a.    The redefinition of "hemp" in S.B. 56, in combination with Ohio's penal code and immunity statutes favoring in-state licensees, violates the Dormant Commerce Clause.

The Commerce Clause provides that "[t]he Congress shall have Power … [t]o regulate Commerce … among the several States." U.S. Const. art. I, § 8, cl. 3. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." *S.-Cent. Timber Dev., Inc.*

9

*v. Wunnicke*, 467 U.S. 82, 87 (1984). In other words, the Commerce Clause has long been understood to have a "negative" aspect that forbids "States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dept. of Envtl. Quality of State of Or.*, 511 U.S. 93, 98, 114 S. Ct. 1345, 128 L. Ed. 2d 13 (1994). But that is precisely what Ohio did when it passed S.B. 56.

The first step in analyzing a law challenged under the dormant Commerce Clause is to "determine whether it regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce." *Id.* A law discriminates against interstate commerce when it treats in-state and out-of-state economic interests differently, benefitting the former and burdening the latter. *See id.* A discriminatory restriction on commerce is generally subject to heightened scrutiny and is ordinarily invalid unless the State demonstrates that the law serves a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.

State laws that facially discriminate or discriminate in practical effect are subject to heightened scrutiny and are virtually *per se* invalid.

> **b. Both facially and in practical effect, Ohio law would now Discriminate against interstate commerce as-applied to hemp-derived products that are otherwise federally lawful.**

"Any statute that 'discriminates against interstate commerce on its face or in effect' is 'subject to heightened scrutiny.'" *Loki Brands, LLC v. Platkin*, No. 24-9389, 2024 WL 4457485, at *10 (D.N.J. Oct. 10, 2024) (quoting *Freeman v. Corzine*, 629 F.3d 146, 158 (3d Cir. 2010)). S.B. 56 has the direct effect of discriminating against out-of-state hemp companies. The bill sweeps federally legal hemp products under the definition of "marijuana" in Ohio. Coupled with the immunity only for in-state licensees, this has the practical effect of intrastate protectionism: S.B. 56 bans out-of-state hemp that is otherwise federally legal while allowing only Ohio's

preexisting medical and recreational marijuana companies to sell federally legal hemp—banning out-of-state manufacturers and retailers from sending their products into Ohio. Properly understanding the discriminatory effects of S.B. 56, requires an analysis of the application and intersection of S.B. 56's revised definition of "hemp" along with Ohio's Controlled Substances Act.

The discriminatory mechanism operates through the interaction of several Ohio statutes. By narrowing the definition of "hemp" under R.C. 928.01(C), S.B. 56 necessarily expanded Ohio's definition of "marihuana," because R.C. 3719.01(M) defines "marihuana" to exclude "hemp" as defined in R.C. 928.01. Once a product is classified as "marihuana," it becomes a Schedule I controlled substance subject to criminal penalties under R.C. 2925.03 (trafficking) and R.C. 2925.11 (possession).

The only pathway to lawful sale of these products runs through Ohio's closed-loop marijuana licensing system. But that system requires an in-state physical presence. To become an Ohio marijuana licensee, one must first have an in-state presence – Ohio's statutory and regulatory scheme does not contemplate otherwise.[1]

And only in-state licensees benefit from immunity from criminal prosecution from selling marihuana (which now, in Ohio, includes otherwise federally legal hemp). Under R.C. 3796.18(A),

---

[1] *See e.g.*, R.C. 3796.05(B)(1), ("Not more than four hundred licensed dispensaries shall be permitted to operate *in this state* at any one time. *** (B)(3) When issuing retail dispensary licenses, the division of cannabis control shall ensure that the *geographic distribution of dispensary sites does not result in the oversaturation of any geographic area*."); Ohio Administrative Code 3796:6-3-01(C), ("*A dispensary shall not dispense marijuana from, obtain marijuana from, or transfer marijuana to, a location outside of the state of Ohio*."); *see also State v. Donoho*, 2018-Ohio-4950, ¶25 (11th Dist.) (analyzing Ohio law then in effect, which remains relevant because the current immunity statutes extend immunity to any entity ever granted a license under any version of Ohio law), ("Further, as noted above, the use of medical marijuana is permitted only when an individual obtains the marijuana from "a retail dispensary licensed under this chapter [Chapter 3796]." R.C. 3796.22(A)(1). Licensed dispensaries are permitted to be located in specific geographic regions or districts within Ohio, as established by the Ohio Board of Pharmacy. Ohio Administrative Code 3796:6-1-01(E). *Accord*, former Ohio Administrative Code 3796:6-6-3-02(A) ("The premises of a dispensary shall be located within Ohio.").

11

licensed Ohio cultivators are immune from prosecution for cultivating marijuana  and selling it to other licensees. Under R.C. 3796.19(A)(1), licensed Ohio-based processors are immune on the condition they sell to Ohio dispensaries or obtain product from Ohio-licensed cultivators. Companies without an in-state presence – like most Plaintiffs – cannot become licensed and thus have no potential immunity unless they establish an in-state presence.  Conditioning immunity upon an in-state presence presents a classic Dormant Commerce Clause violation.  In-state licensees that grow, process, or sell federally lawful hemp products are immune from prosecution, but firms with no in-state presence cannot achieve the same status.  This scheme favors in-state economic interests facially and in practical effect. "This differential treatment between in-state and out-of-state interests favors [Ohio] hemp companies over out-of-state competitors." *Loki*, 2024 WL 4457485, at \*10.

This scheme deliberately discriminates against out-of-state hemp producers by imposing criminal liability on them for conduct that is identical to that for which in-state participants are expressly exempt from prosecution. *See id.* If all states enacted a regime like Ohio's, companies could be forced to open brick-and-mortar locations in each state. *See Granholm v. Heald*, 544 U.S. 460, 475 (2005). An in-state presence requirement runs contrary to the Supreme Court's admonition "that States cannot require an out-of-state firm 'to become a resident in order to compete on equal terms.'" *Id.* (quoting *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 72, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963)).

The Supreme Court views with "particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually per se illegal." *Pike v. Bruce Church, Inc.*, 397 U.S.

12

137, 145 (1970). S.B. 56 "effectively criminalizes the possession, shipment, and transportation of out-of-state … hemp products by manufacturers, producers, and consumers, while simultaneously allowing … hemp products from [Ohio] to survive." *Loki*, 2024 WL 4457485, at \*11. The bill does not survive heightened scrutiny and is *per se* illegal.

### c. One Ohio court has already found a likelihood of success on this claim.

An Ohio court has already enjoined enforcement of S.B. 56 against one out-of-state hemp producer. The Sandusky County Court of Common Pleas found that, "on the limited record presented for preliminary relief, Plaintiff has made a sufficient showing of likelihood of success to warrant narrowly tailored, as-applied, prospective relief." *See North Fork Distrib. I, LLC v. Wensinger*, No. 26CV312, Decision and Order Granting Plaintiff's Motion for Preliminary Injunction in Part (Ohio Ct. Common Pleas, Sandusky Cty. May 14, 2026). The court concluded that "Plaintiff challenges the combined practical effect of S.B. 56's reclassification of certain hemp-derived products, the resulting criminal consequences, and the licensure/immunity structure that Plaintiff contends leaves lawful participation available only through an Ohio-licensed dispensary system requiring Ohio physical presence" and that the "alleged practical effect is sufficient to raise a substantial dormant Commerce Clause concern…." Plaintiffs here, who are similarly situated to the *North Fork Distribution* plaintiff, should be afforded similar injunctive relief.

### d. A federal court in New Jersey enjoined a materially analogous scheme.

As outlined above, in *Loki* a federal court invalidated a materially analogous New Jersey regulatory scheme on dormant Commerce Clause and federal preemption grounds. The court found that "the effect of the NJHAA violates Congress's express preemption provision" and that "the relevant portions of the NJHAA that effectively makes it a crime to transport or ship hemp

13

cultivated, derived, or manufactured outside New Jersey are nevertheless preempted by Section 10114" of the Farm Bill. *Loki*, 2024 WL 4457485, at *8.

### e.  Less restrictive alternatives exist.

To the extent Defendants argue that the State has legitimate health and safety concerns, there are numerous less restrictive means to address those considerations, such as age-gating (*e.g.*, 21+ years old), labeling, and independent laboratory testing requirements. *See Loki*, 2024 WL 4457485, at *1, 11 ("[T]he provision banning the sale or distribution of THC containing products to anyone under 21 years of age – which is not being challenged – shall remain in effect" and "the state may impose reasonable quality and purity standards for products sold in state."). The Sandusky County Court likewise found that Plaintiff's evidence supported "that at least some of the State's public-health and consumer-safety concerns may be addressed through warnings, packaging rules, potency disclosures, QR-code information, testing, age restrictions, serving-size restrictions, and state-specific labeling requirements." *North Fork Distrib.*, May 14, 2026 Order.

### 1.  S.B. 56 Is Preempted by Federal Law Under the Supremacy Clause.

S.B. 56 also stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the 2018 Farm Bill – namely, legalizing hemp and hemp products and protecting the shipment and transportation of hemp and hemp products through the states.

The 2018 Farm Bill standardized the definition of hemp, separated its legal status from that of marijuana, and expressly provided that "[n]o State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with" federal law. Agriculture Improvement Act of 2018, Pub. L. No. 115-334, § 10114(b), 132 Stat. 4914 (2018). S.B. 56 redefines "hemp" under Ohio law more narrowly than the federal definition, reclassifying

14

federally legal hemp as "marihuana" and thereby prohibiting its transportation and shipment to, from, and through Ohio in direct contradiction of the 2018 Farm Bill.

By criminalizing the interstate shipment of federally lawful hemp products once they cross Ohio's borders, S.B. 56 stands as an obstacle to Congress's objective of facilitating a national market in hemp. This is precisely the result the *Loki* court found to be violative of the Supremacy Clause:

> [T]he Court finds that Plaintiffs are correct that the effect of the NJHAA violates Congress's express preemption provision. The NJHAA creates and defines the category of "Intoxicating Hemp Products" as hemp products cultivated and manufactured in New Jersey and sold in New Jersey, but does not recognize corresponding intoxicating hemp products cultivated, produced, or manufactured outside of New Jersey. Out-of-state hemp products, moreover, are not exempted from the Controlled Dangerous Substance Act; therefore, they remain Schedule I controlled substances. In short, once the NJHAA becomes operative on October 12, 2024, it will effectively be a crime to transport or ship out-of-state intoxicating hemp products to, or through New Jersey.

*Loki*, 2024 WL 4457485, at *8. Ohio's scheme is materially indistinguishable: the moment federally legal out-of-state hemp crosses Ohio's borders, it becomes "marijuana" for purposes of Ohio law, subjecting its possessors and transporters to criminal prosecution. The challenged provisions of S.B. 56 are therefore preempted under both express and implied conflict preemption principles.

### 2. Defendants Have Deprived Plaintiffs of Constitutional Rights Under Color of State Law in Violation of 42 U.S.C. § 1983.

Defendants, acting under color of state law, have deprived and threaten to continue to deprive Plaintiffs of rights, privileges, and immunities secured by the Constitution of the United States, including the right to engage in the interstate commerce of federally legal hemp products free from state interference prohibited by the Commerce Clause and the Supremacy Clause. By enforcing or threatening to enforce S.B. 56's unconstitutional provisions against Plaintiffs –

15

including the threat of felony prosecution for possessing or selling federally legal hemp – Defendants have caused and will continue to cause Plaintiffs irreparable injury, including the loss of their ability to conduct business in Ohio, the destruction of their customer relationships, and the chilling of their constitutionally protected right to engage in interstate commerce.

### B. PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF.

Irreparable harm is established here on multiple independent grounds. First, because Plaintiffs are likely to prevail on the merits of their constitutional claims, there is automatically irreparable harm. When constitutional rights are threatened or impaired, "irreparable injury is presumed." *Vitolo*, 999 F.3d at 360.

Second, even apart from the constitutional presumption, Plaintiffs face concrete and imminent irreparable injuries that are not compensable by monetary damages. Absent immediate relief, Plaintiffs risk facing felony marijuana possession and trafficking prosecutions for selling federally legal products in interstate commerce. The threat of criminal prosecution alone constitutes irreparable harm. *See North Fork Distrib.*, May 14, 2026 Order ("The harm asserted is not limited to ordinary lost sales. [Plaintiff faces] credible exposure to enforcement consequences if the products are treated as marijuana under Ohio law.").

Third, Plaintiffs face loss of Ohio market access, disruption of existing customer relationships, inability to sell existing inventory into Ohio, and loss of retail shelf space – all injuries that are impossible to adequately remedy through a later damages award. As the Sandusky County Court found, "[m]arket exclusion, disruption of business relationships, loss of retail shelf space, and credible criminal or regulatory enforcement exposure are not adequately remedied by a later damages award." *North Fork Distrib.*, May 14, 2026 Order.

16

Fourth, Plaintiffs have no adequate remedy at law and monetary damages are not available to serve as an adequate substitute for injunctive relief, as S.B. 56's targeting of out-of-state hemp products "has a practical effect of controlling interstate commerce extraterritorially. Because out-of-state intoxicating hemp products would soon be deemed controlled dangerous substances, while in-state versions of the same product would not, companies would be compelled to rethink their business plans." *Loki*, 2024 WL 4457485, at *11.

### C.  THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR.

An injunction will not unjustifiably harm Defendants or third parties. Defendants are law enforcement officers and prosecutors who would merely be restrained from enforcing an unconstitutional statute – which causes no cognizable harm. *Vitolo*, 999 F.3d at 360 ("[N]o cognizable harm results from stopping unconstitutional conduct….").

Defendants retain full authority to enforce neutral, generally applicable health and safety requirements – including age restrictions, testing requirements, labeling requirements, packaging requirements, consumer-warning requirements, and restrictions on marketing to minors. The injunctive relief sought is narrowly tailored to prevent the constitutional injury without disrupting the State's legitimate regulatory authority.

### D.  THE PUBLIC INTEREST SUPPORTS INJUNCTIVE RELIEF.

It is always in the public interest to prevent the violation of constitutional rights. *Vitolo*, 999 F.3d at 360; *Chabad of S. Ohio & Congregation Lubavitch v. Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004) ("[T]he public interest is served by preventing the violation of constitutional rights.").

The public also has an interest in the free flow of interstate commerce in federally legal products. By reclassifying federally legal hemp as marijuana and reserving the market for a finite

17

number of in-state licensees, S.B. 56 harms Ohio consumers who are denied access to federally legal hemp products through normal interstate commerce channels and are instead forced to patronize marijuana dispensaries that, by definition, violate federal law.

Moreover, the General Assembly itself sought to allow hemp beverages in one form or another – suggesting that the legislature did not view these products as presenting insurmountable public safety concerns. Indeed, the very products that Plaintiffs are forbidden from selling in Ohio can be freely sold to the public by in-state providers. The public is best served by preserving the status quo and allowing consumers the ability to consume hemp products from both in-state and out-of-state suppliers.

### E. DEFENDANT CLASS CERTIFICATION IS APPROPRIATE

Plaintiffs respectfully request that this Court certify a defendant class of all Ohio law enforcement officers pursuant to Federal Rule of Civil Procedure 23(b)(2). This case presents purely legal questions – the constitutionality of S.B. 56 and its interaction with Ohio's controlled-substances laws – that are common to every law enforcement officer in the State and warrant class-wide declaratory and injunctive relief. A defendant class is appropriate where, as here, the party opposing the class has acted on grounds that apply generally to the class, making final injunctive or declaratory relief appropriate. *See* Fed. R. Civ. P. 23(b)(2).

The Northern District of Ohio has recognized the propriety of this procedure. *See Akron Ctr. For Reproductive Health v. Rosen*, 110 F.R.D. 576, 583-84 (N.D. Ohio 1986) (certifying a defendant class of prosecutors and enjoining the entire class from enforcement). As in *Rosen*, the named Defendants here are prosecuting attorneys and law enforcement officers who are representatives of the broader class, their interests are aligned, they are represented by able counsel, and the case turns on common legal issues regarding the enforceability of S.B. 56. Joinder

of all Ohio law enforcement officers is impracticable, the claims present common questions of law, the defense of the representative parties are typical of the class, and the representatives will fairly and adequately protect the interests of the class.

### F.  VI. THE SCOPE OF INJUNCTIVE RELIEF

Plaintiffs respectfully request that this Court enter an order temporarily restraining and preliminarily enjoining Defendants, including all of their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with Defendants or Defendants' officers, agents, servants, employees, attorneys from:

1. Taking any adverse, punitive, or other governmental action against Plaintiffs, whether directly or indirectly – and whether criminal, civil, administrative, or regulatory in nature or otherwise – based upon, pursuant to, or under the authority of statutes purportedly created, amended, or otherwise enacted under color of the disputed statutory scheme of enrolled Ohio Senate Bill 56. Among other things, this order prohibits searches, seizures, or charges (against  any person or entity) that in any way depend, directly or indirectly, upon the interaction between the Ohio definition of "marihuana" and the purported amended Ohio definition of "hemp," so long as the substance or product at issue qualifies as "hemp" or a hemp-derived product under federal law; and

2. Taking any adverse, punitive or other governmental action against any third parties that facilitate Plaintiffs' hemp business operations (including, but not limited to, persons engaging in transportation, storage, distribution, or retail), whether directly or indirectly – and whether criminal, civil, administrative, or regulatory in nature or otherwise – based upon, pursuant to, or under the authority of statutes purportedly created, amended, or otherwise enacted under color of the disputed statutory scheme of enrolled Ohio Senate Bill 56. Among other things, this order prohibits searches, seizures, or charges (against  any person or entity) that in any way depend, directly or indirectly, upon the interaction between the Ohio definition of "marihuana" and the purported amended Ohio definition of "hemp," so long as the substance or product at issue qualifies as "hemp" or a hemp-derived product under federal law.

## V.    CONCLUSION

S.B. 56 is filled with facial and structural discrimination against out-of-state businesses without a physical presence in Ohio. It also bans in-state companies from selling federally legal hemp products that were manufactured, or contain hemp sourced from, outside Ohio. Its practical

19

effect is to bar many companies from accessing the market demand in this state for their products, while inseparably favoring in-state companies that enjoy immunity from the criminal prosecutions that would befall Plaintiffs. By virtue of the General Assembly's redefining hemp so narrowly that federally lawful products from foreign states become "marihuana" the moment they enter Ohio, coupled with the immunity granted to select in-state firms, has unconstitutionally favored in-state economic interests. The Commerce Clause does not tolerate such a result, and this Court should not either.

A copy of the proposed Temporary Restraining Order is attached as Exhibit 1

Date: June 4, 2026

Respectfully submitted,

*/s/ Andrew R. Mayle*
Andrew R. Mayle (0075622)
MAYLE LLC

/s/ *Gregory H. Wagoner*
Gregory H. Wagoner (0076132)
Nicholas T. Stack (0086333)
SHUMAKER, LOOP & KENDRICK, LLP

*Attorneys for Plaintiffs*

20

# CERTIFICATE OF SERVICE

This will certify that on June 4, 2026 a copy of the **Motion for Temporary Restraining**

**Order and Injunction** was served electronic and regular mail upon:

**BETH TISCHLER**
Sandusky County Prosecuting Attorney
100 North Park Avenue
Fremont, OH  43420

**STEVEN D. BARNETT**
Carroll County Prosecuting Attorney
7 East Main Street
Carrollton, OH  44615

**MATT MUZIC**
Holmes County Prosecuting Attorney
164 East Jackson Street
Millersburg, OH  44654

**CONNIE LEWANDOWSKI**
Portage County Prosecuting Attorney
241 South Chestnut Street
Ravenna, OH  44266

**KYLE STONE**
Stark County Prosecuting Attorney
110 Central Plaza South, Suite 510
Canton, OH  44702

**ELLIOT KOLKOVICH**
Summit County Prosecuting Attorney
53 University Avenue
Akron, OH  44308-1680

**R. SCOTT DEEDRICK**
Tuscarawas County Prosecuting Attorney
125 East High Avenue
New Philadelphia, OH  44663

**ANGELA WYPASEK**
Wayne County Prosecuting Attorney
115 West Liberty Street
Wooster, OH  44691

**CHRISTOPHER R. TUNNELL**
Ashland County Prosecuting Attorney
110 Cottage Street, 3rd Floor
Ashland, OH  44805

**APRIL GRABMAN**
Ashtabula County Prosecuting Attorney
25 West Jefferson Street
Jefferson, OH  44047

**MATTHEW CRALL**
Crawford County Prosecuting Attorney
112 East Mansfield Street, Suite 305
Bucyrus, OH  44820

**MICHAEL C. O'MALLEY**
Cuyahoga County Prosecuting Attorney
1200 Ontario Street
Cleveland, OH  44113

**JAMES FLAIZ**
Geauga County Prosecuting Attorney
231 Main Street, Suite 3A
Chardon, OH  44024

**CHARLES E. COULSON**
Lake County Prosecuting Attorney
105 Main Street
Painesville, OH  44077

**TONY CILLO**
Lorain County Prosecuting Attorney
225 Court Street, 3rd Floor
Elyria, OH  44035

**S. FORREST THOMPSON**
Medina County Prosecuting Attorney
72 Public Square
Medina, OH  44256-2279

**JODIE SCHUMACHER**
Richland County Prosecuting Attorney
38 South Park Street
Mansfield, OH  44902

**DESTINY CALDWELL**
Allen County Prosecuting Attorney
204 N. Main Street, Suite 302
Lima, OH  45801

**BENJAMIN R. ELDER**
Auglaize County Prosecuting Attorney
201 Willipie Street
Wapakoneta, OH  45895

**MORRIS J. MURRAY**
Defiance County Prosecuting Attorney
500 Court Street, Suite C
Defiance, OH  43512

**KEVIN J. BAXTER**
Erie County Prosecuting Attorney
247 Columbus Avenue, Suite 319
Sandusky, OH  44870

**T. LUKE JONES**
Fulton County Prosecuting Attorney
152 South Fulton Street, Suite 240
Wauseon, OH  43567

**SEAN ABBOTT**
Hancock County Prosecuting Attorney
514 South Main Street, Suite B
Findlay, OH  45840

**BRADFORD W. BAILEY**
Hardin County Prosecuting Attorney
One Courthouse Square - #50
Kenton, OH  43326-1575

21

**GWEN HOWE GEBERS**
Henry County Prosecuting Attorney
660 N. Perry St.  Suite 101
Napoleon, OH  43545

**JAMES JOEL SITTERLY**
Huron County Prosecuting Attorney
12 East Main Street, 4th Floor
Norwalk, OH  44857

**RAYMOND A. GROGAN**
Marion County Prosecuting Attorney
100 Executive Drive, 2nd Floor
Marion, OH  43302

**ERIN MINOR**
Mercer County Prosecuting Attorney
119 North Walnut Street
Celina, OH  45822

**JAMES VANEERTEN**
Ottawa County Prosecuting Attorney
315 Madison Street, 2nd Floor
Port Clinton  OH  43452

**MATT MILLER**
Paulding County Prosecuting Attorney
120 South Walnut Street
Paulding, OH  45879

**GARY L. LAMMERS**
Putnam County Prosecuting Attorney
336 East Main Street, Suite B
Ottawa, OH  45875

**DEREK W. DEVINE**
Seneca County Prosecuting Attorney
79 South Washington Street
Tiffin, OH  44883

**DILLON STAAS IV**
Van Wert County Prosecuting Attorney
120 West Main Street
Van Wert, OH  45891

**KATHERINE J. ZARTMAN**
Williams County Prosecuting Attorney
1425 East High Street
Bryan, OH  43506

**ERIC J. FIGLEWICZ**
Wyandot County Prosecuting Attorney
137 South Sandusky Avenue
Upper Sandusky, OH  43351
and

**KELLER BLACKBURN**
Athens County Prosecuting Attorney
Athens County Courthouse
Athens, OH  45701

**KEVIN FLANAGAN**
Belmont County Prosecuting Attorney
52160 National Road
St. Clairsville, OH  43950

**VITO ABRUZZINO**
Columbiana County Prosecuting Attorney
135 South Market Street
Lisbon, OH  44432

**BENJAMIN E. HALL**
Coshocton County Prosecuting Attorney
500 North Third Street, Suite A
Coshocton, OH  43812

**MELISSA SCHIFFEL**
Delaware County Prosecuting Attorney
140 North Sandusky Street
Delaware, OH  43015

**R. KYLE WITT**
Fairfield County Prosecuting Attorney
239 West Main Street
Lancaster, OH  43130

**JESS C. WEADE**
Fayette County Prosecuting Attorney
119 East Market Street
Washington C.H., OH 43160-1355

**SHAYLA FAVOR**
Franklin County Prosecuting Attorney
373 South High Street
Columbus, OH  43215

**JASON D. HOLDREN**
Gallia County Prosecuting Attorney
18 Locust Street, Room 1267
Gallipolis, OH  45631

**LINDSEY ANGLER**
Guernsey County Prosecuting Attorney
627 Wheeling Ave
Cambridge, OH  43725-0640

**LAUREN KNIGHT**
Harrison County Prosecuting Attorney
111 West Warren Street
Cadiz, OH  43907

**JENNIFER GRAHAM**
Hocking County Prosecuting Attorney
88 South Market
Logan, OH  43138

**TRENT DOUTHETT**
Jackson County Prosecuting Attorney
295 Broadway Street
Jackson, OH 45640

**JANE HANLIN**
Jefferson County Prosecuting Attorney
16001 SR 7
Steubenville, OH  43952

**CHARLES T. MCCONVILLE**
Knox County Prosecuting Attorney
117 East High Street, Suite 234
Mt. Vernon, OH  43050-3457

**JENNY WELLS**
Licking County Prosecuting Attorney
20 South Second Street
Newark, OH  43055

2

**ERIC C. STEWART**
Logan County Prosecuting Attorney
117 E. Columbus Ave., S-200
Bellefontaine, OH  43311

**NICHOLAS ADKINS**
Madison County Prosecuting Attorney
59 North Main Street
London, OH  43140

**LYNN MARO**
Mahoning County Prosecuting Attorney
21 West Boardman Street, Suite 600
Youngstown, OH  44503

**JAMES K. STANLEY**
Meigs County Prosecuting Attorney
112 E. Memorial Drive, Suite B
Pomeroy, OH  45769

**JAMES L. PETERS**
Monroe County Prosecuting Attorney
101 North Main Street, Room 15
Woodsfield, OH  43793

**RICHARD WELCH**
Morgan County Prosecuting Attorney
19 East Main Street
McConnelsville, OH  43756-1125

**ANDREW WICK**
Morrow County Prosecuting Attorney
60 East High Street
Mt. Gilead, OH  43338

**RONALD WELCH**
Muskingum County Prosecuting Attorney
27 North Fifth Street
Zanesville, OH  43702-0189

**JORDAN CROUCHER**
Noble County Prosecuting Attorney
150 Courthouse
Caldwell, OH  43724

**TERRY RUGG**
Perry County Prosecuting Attorney
111 North High Street
New Lexington, OH  43764

**JAYME FOUNTAIN**
Pickaway County Prosecuting Attorney
203 South Scioto Street
Circleville, OH  43113-0910

**MIKE DAVIS**
Pike County Prosecuting Attorney
100 East Second Street, Suite 100
Waverly, OH  45690-1301

**JEFFREY C. MARKS**
Ross County Prosecuting Attorney
33 West Main Street, Ste. 200
Chillicothe, OH  45601

**DENNIS WATKINS**
Trumbull County Prosecuting Attorney
160 High Street
Warren, OH  44481

**DAVID W. PHILLIPS**
Union County Prosecuting Attorney
249 West Fifth Street
Marysville, OH  43040

**WILLIAM L. ARCHER, JR.**
Vinton County Prosecuting Attorney
Vinton County Courthouse
McArthur, OH  45651

**NICOLE COIL**
Washington County Prosecuting Attorney
205 Putnam Street
Marietta, OH  45750

**ARIANA BOWLES NORRIS**
Adams County Prosecuting Attorney
110 West Main Street
West Union, OH  45693

**ZACHARY A. CORBIN**
Brown County Prosecuting Attorney
740 Mt. Orb Pike, Suite 1
Georgetown, OH  45121

**MICHAEL T. GMOSER**
Butler County Prosecuting Attorney
315 High Street, 11th Floor
Hamilton, OH  45011

**MARK TEKULVE**
Clermont County Prosecuting Attorney
76 South Riverside Drive, 2nd Floor
Batavia, OH  45103

**BRIAN A. SHIDAKER**
Clinton County Prosecuting Attorney
103 East Main Street
Wilmington, OH  45177

**CONNIE PILLICH**
Hamilton County Prosecuting Attorney
230 East Ninth Street, S-4000
Cincinnati, OH  45202

**ANNEKA COLLINS**
Highland County Prosecuting Attorney
112 Governor Foraker
Hillsboro, OH  45133

**BRIGHAM M. ANDERSON**
Lawrence County Prosecuting Attorney
111 South 4th Street
Ironton, OH  45638

**SHANE A. TIEMAN**
Scioto County Prosecuting Attorney
612 Sixth St.
Portsmouth, OH  45662

**DAVID P. FORNSHELL**
Warren County Prosecuting Attorney
500 Justice Drive
Lebanon, OH  45036

3

**KEVIN S. TALEBI**
Champaign County Prosecuting
Attorney
200 North Main Street
Urbana, OH 43078

**DAN DRISCOLL**
Clark County Prosecuting
Attorney
50 East Columbia Street, Suite
449
Springfield, OH 45501

**JAMES BENNETT**
Darke County Prosecuting
Attorney
Darke County Courthouse 3rd
Floor
Greenville, OH 45331

**DAVID HAYES**
Greene County Prosecuting
Attorney
61 Greene Street, 2nd Floor
Xenia, OH 45385-3101

**PAUL M. WATKINS**
Miami County Prosecuting
Attorney
201 West Main Street
Troy, OH 45373

**MATHIAS H. HECK, JR.**
Montgomery County
Prosecuting Attorney
301 West Third St, 5th Floor
Dayton, OH 45422

**ERIC MARIT**
Preble County Prosecuting
Attorney
101 East Main Street
Eaton, OH 45320

**WILLIAM ZIMMERMAN**
Shelby County Prosecuting
Attorney
P.O. Box 4159
Sidney, OH 45365-0987

**REBECCA FACEY**
Chief Prosecutor
City of Toledo
555 N. Erie Street
Toledo, OH 43604

**AQUEELAH A. JORDAN**
Chief Prosecutor
Cleveland Prosecutor's Office
1200 Ontario Street, 8th Floor
Cleveland, OH 44113

**CRAIG J. MORGAN**
Chief City Prosecutor
City of Akron Law Department
217 S. High Street, Suite 203
Akron, OH 44308

**ZACH KLEIN**
Columbus City Attorney
City of Columbus
77 N. Front Street
Columbus, OH 43215

**BARBARA DOSECK**
Director of Law
City of Dayton
City Hall, 3rd Floor
101 W. Third Street
Dayton, OH 45402

**EMILY SMART WOERNER**
City Solicitor
City of Cincinnati
801 Plum Street, Room 214
Cincinnati, OH 45202

**HEATHER PENTYCOFE**
Chief Prosecutor
City of Sylvania
6700 Monroe Street
Sylvania, OH 43560

**CHYNNA FIFER**
Oregon City Prosecutor
5330 Seaman Road
Oregon, OH 43616

**DAN ARNOLD**
Maumee Prosecutor
400 Conant Street
Maumee, OH 43537

**PAUL A. DOBSON**
Wood County Prosecuting
Attorney
One Courthouse Square
Bowling Green, OH 43402-
2431

/s/ *Gregory H. Wagoner*

Gregory H. Wagoner (0076132)
SHUMAKER, LOOP & KENDRICK, LLP

*Attorneys for Plaintiffs*

4