UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Titan Logistics Group LLC, *et al.*,                                 Case No. 3:26-cv-1300

            Plaintiffs,

    v.                                                               MEMORANDUM OPINION
                                              AND ORDER

Beth Tischler, *et al.*,

            Defendants.


## I.      INTRODUCTION AND BACKGROUND

Plaintiffs Titan Logistics Group LLC, Hopportunity Holding Company LLC, Saucy Seltzer LLC, App Girls LLC, Modern Distribution, LLC, Grayscale Brewing, LLC, IHC Investments, Inc., Know Naturals LLC, Precision Fill and Pack LLC, and JSZN LLC, filed suit against 96 county and municipal prosecutor's offices to prohibit those prosecutors and law enforcement officers working with them from taking any adverse action against Plaintiffs pursuant to changes to the definitions of products derived from hemp and marijuana enacted through the passage of Ohio Senate Bill 56. (Doc. No. 1).

Ohio law previously defined hemp as the Cannabis sativa L. plant, or any of its parts, with a concentration of no more than 0.3% of delta-9 THC, a statutory definition consistent with that found in federal law.  *See* 7 U.S.C.A. § 1639o(1).  Senate Bill 56, as relevant here, redefined hemp to include any substance with a total concentration of no more than 0.3% of any THC compound. Ohio Rev. Code § 928.01(C).  Any substance with a total concentration of THC greater than 0.3% – in other words, any intoxicating hemp product – now constitutes marijuana.  Ohio Rev. Code §

3719.01(M).  While the cultivation and sale of marijuana generally is prohibited by federal and state law, Ohio permits companies to do so if they have obtained a license.  *See* Ohio Rev. Code § 3796.18.  A company may obtain a license only if they obtain, transfer, and dispense those products from locations solely within the State of Ohio.  *See* Ohio Admin. Code 3796:6-3-01(C).

Plaintiffs make and sell hemp beverages and other hemp-derived products but do not have a physical presence in the State of Ohio.  They moved for a temporary restraining order and a preliminary injunction while they pursued their claims for relief.  (Doc. No. 2).  I concluded Plaintiffs were likely to succeed on their dormant Commerce Clause claim and granted Plaintiffs' motion for a temporary restraining order.  (Doc. No. 21).  After granting the State of Ohio's motion to intervene as a defendant, (Doc. No. 36), I set deadlines for additional briefing on Plaintiffs' motion for a preliminary injunction.  (Doc. No. 38).

Plaintiffs filed a brief in support of their motion.  (Doc. No. 41).  The State of Ohio and Lorain County Prosecuting Attorney Anthony Cillo filed briefs in opposition to Plaintiffs' motion for a preliminary injunction.[1]  (Doc. Nos. 56 and 58).  Plaintiffs filed a brief in reply.  (Doc. No. 69).

I also granted the motion of the Ohio Cannabis Coalition ("OHCANN") – a "trade association representing Ohio's licensed cannabis industry," (Doc. No. 71 at 2) – to file an amicus brief in support of Defendants.  (Doc. No. 68).  Plaintiffs subsequently filed a brief in response. (Doc. No. 74).

OHCANN, though likely inadvertently, sums up the problem with Senate Bill 56. OHCANN argues Plaintiffs are not entitled to injunctive relief because "[e]ven if Ohio's regulatory framework discriminated against out-of-state companies, such discrimination is permissible because the Commerce Clause does not apply to state-legal, federally illegal cannabis markets."  (Doc. No. 71

---

[1] I reiterate my earlier holding that I consider any arguments advanced by the State of Ohio or an individual Defendant to be applicable to all Defendants.  No Defendant has waived opposition to Plaintiffs' requested relief because it chose not to file additional briefing.

at 10) (citing *Peridot Tree WA, Inc. v. Wash. State Liquor & Cannabis Control Bd.*, 162 F.4th 1179, 1188 (9th Cir. 2026)).  But what Senate Bill 56 has done is to exclude federally legal intoxicating hemp products from Ohio's statutory definition of hemp, redefine them as illegal marijuana, and then to prohibit any company from cultivating or selling those products unless the company has a physical presence in the State of Ohio.  Because Plaintiffs are likely to succeed on their claim that that law impermissibly favors in-state companies over out-of-state companies in violation of the Constitution of the United States, I grant Plaintiffs' motion for a preliminary injunction.

## II.    DISCUSSION

### A.    LACHES

The State argues I erred in declining to dismiss this case pursuant to the doctrine of laches. (Doc. No. 56 at 4-7).  In granting Plaintiffs' motion for a temporary restraining order, I concluded that laches "does not apply to requests for prospective injunctive relief."  (Doc. No. 21 at 3-4) (citing *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002)).  The State contends that, because "[p]reliminary injunctive relief was no part of the *Nartron* case," (Doc. No. 56 at 6), that court's statement that laches "does not prevent [a] plaintiff from obtaining injunctive relief" cannot support my decision in this case.  *Nartron*, 305 F.3d at 412.  Rather, the State asserts, "courts routinely deny preliminary injunctive relief to parties who do not act diligently."  (Doc. No. 56 at 6) (citing *Lyons v. City of Columbus*, No. 2:20-CV-3070, 2020 WL 3396319, at *5 (S.D. Ohio June 19, 2020), *Petland, Inc. v. Hendrix*, No. 2:04CV224, 2004 WL 3406089, at *6 (S.D. Ohio Sept. 14, 2004), and *NACCO Indus., Inc. v. Applica Inc.*, No. 1:06-CV-3002, 2006 WL 3762090, at *3 (N.D. Ohio Dec. 20, 2006)).[2]

---

[2]  *Petland* does not help the State here, as that court refused to apply laches.  *See Petland*, 2004 WL 3406089, at *6.

I am not convinced laches applies in these circumstances, where the basis for Plaintiffs' requests for preliminary and permanent injunctive relief arises from what they allege to be the ongoing violation of their constitutional rights.  But, even if I assume for the sake of argument that the doctrine in fact applies, the State fails to show laches prohibits me from granting a preliminary injunction.

A defendant asserting laches as an affirmative defense must show "(1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay." *Am. C.L. Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004) (citation omitted).  The State argues it has been prejudiced by Plaintiffs' delay in moving for preliminary injunctive relief because it had already begun implementing Senate Bill 56 by engaging in the rulemaking process.[3]  (Doc. No. 56 at 7).

But this argument relies on a presumption that Senate Bill 56 is constitutional.  While Defendants could ultimately prevail in this case, they cannot preclude review of that very issue by arguing they will have suffered prejudice if they are enjoined from enforcing and implementing Senate Bill 56 while the case is litigated.  I am not persuaded that Plaintiffs must be required to endure an ongoing violation of their constitutional rights – if the statute ultimately is unconstitutional – while this case moves toward a final judgment.

**B.  MOTION FOR PRELIMINARY INJUNCTION**

In determining whether to issue a preliminary injunction, I must examine and weigh the following four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the

---

[3]  The State also argues that "existing licensees of the Division [of Cannabis Control] have taken numerous steps in reliance on" Senate Bill 56 and will be prejudiced if that work is undone.  (Doc. No. 56 at 7).  But those licensees are not defendants in this litigation and the State fails to explain how it can rely on alleged prejudice suffered by non-parties to establish that the named Defendants have been prejudiced.

public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*).

I previously held that:

> Plaintiffs are likely to succeed on the merits of their claim that Senate Bill 56 violates the dormant Commerce Clause by prohibiting out-of-state companies from offering their products for sale unless they source and distribute those products solely in Ohio. . . . While the State of Ohio contends Senate Bill 56 is facially neutral because it prohibits both in-state and out-of-state companies from selling hemp-derived products with a THC concentration of greater than 0.3%, (Doc. No. 10 at 15-16), they do not dispute that, in order to obtain a license to sell those products, companies must obtain, transfer, and dispense those products from locations within the State of Ohio only. *See* Ohio Admin. Code 3796:6-3-01(C).

> "[A]bsent discrimination, 'a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to' the interests of its citizens." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (quoting *Guy v. Baltimore*, 100 U.S. 434, 443 (1880)). As a result, a state law that "imposes the same burdens on in-state . . . producers that it imposes on out-of-state ones" does not violate the Constitution. *Nat'l Pork Producers*, 598 U.S. at 370. *See also Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 373 (6th Cir. 2013) (holding that a state law that "burdens in-state beverage manufacturers who meet the designated thresholds to the same extent it burdens out-of-state manufacturers who meet the designated threshold . . . does not discriminate against interstate commerce on this basis") (internal quotation marks omitted).

> But "the Commerce Clause prevent[s] States from passing facially neutral laws that place[] an impermissible burden on interstate commerce." *Granholm v. Heald*, 544 U.S. 460, 477 (2005). Thus, while it is true that Senate Bill 56 applies the same definition of hemp and attendant restrictions to both in-state and out-of-state companies, (*see* Doc. No. 10 at 15-16), *only* companies that source, manufacture, and distribute their hemp-derived products within Ohio may obtain a license permitting them to do so. The State of Ohio cannot circumvent the unconstitutional character of these restrictions simply by limiting the number of in-state companies that may obtain a license.

(Doc. No. 21 at 5-6) (footnote omitted).

The State argues that I erred in conducting a dormant Commerce Clause analysis because Congress has passed legislation regulating hemp. (Doc. No. 56 at 7-9) (citing *Fednav, Ltd. v. Chester*, 547 F.3d 607 (6th Cir. 2008)). In *Fednav*, after observing that no party claimed the challenged statute

"favor[ed] in-state economic interests over out-of-state interests," the Sixth Circuit stated that the dormant Commerce Clause does not prohibit "state regulation that Congress, in *actively exercising* its power under the Clause, expressly contemplated." *Fednav*, 547 F.3d at 623, 624 (emphasis in original).

But the Supreme Court has held "that state laws offend the Commerce Clause when they seek to build up . . . domestic commerce through burdens upon the industry and business of other States, regardless of whether Congress has spoken." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (observing "this antidiscrimination principle lies at the very core of our dormant Commerce Clause jurisprudence") (citations and internal quotation marks omitted) (alteration by *Nat'l Pork Producers*).  The State offers no evidence that Congress expressly and approvingly contemplated that a state would enact legislation favoring in-state hemp companies over out-of-state companies.  And whether I look to Senate Bill 56, the Ohio Administrative Code, or, as Plaintiffs describe it, the "'four-step'" dance interrelating the two, (Doc. No. 69 at 15 n.1), the inescapable conclusion is that Ohio has chosen to permit only in-state companies to sell intoxicating hemp-derived products and has expressly prohibited out-of-state companies from participating in the same market.[4]

A law that discriminates against interstate commerce may "survive only if it advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008).  Here too, Plaintiffs have demonstrated there is a strong likelihood they will succeed on the merits.  The State has argued that,

---

[4]  It is true that Ohio's definition of intoxicating hemp products mirrors the federal definition set to take effect in November of this year.  (*Cf.* Doc. No. 56 at 3-4; Doc. No. 58 at 6; and Doc. No. 71 at 4).  But none of the Defendants nor OHCANN point to any case in which a court concluded that a present violation of a plaintiff's constitutional rights lacked a remedy because the aggrieving conduct may become constitutional in the future.  I find this line of argument unpersuasive.

6

in the absence of its current statutory and regulatory scheme, it "has simply no way of knowing what is in an out-of-state intoxicating hemp product." (Doc. No. 10 at 17).

But, as the State implicitly concedes, it <u>does</u> have a way to determine the contents and safety of in-state intoxicating hemp products.  This is because its licensing regulations require that in-state companies show their cards by disclosing, among other things, where their products are sourced, how they were manufactured, and what they contain.  None of the Defendants have rebutted Plaintiffs' assertion during the temporary restraining order hearing that the legislature considered implementing age minimums and potency testing for all intoxicating hemp products made available for sale in Ohio, and no Defendant has explained why these nondiscriminatory alternatives are inadequate to satisfy Ohio's legitimate public health and safety concerns without discriminating against out-of-state companies.[5]

Substantially similar laws have failed dormant Commerce Clause scrutiny elsewhere.  In 2024, the State of New Jersey enacted a law that, among other things, excluded hemp-derived products containing more than 0.3% total THC concentration from the broader definition of hemp and permitted the sale of those products only if they were "cultivated, derived, or manufactured in New Jersey and sold in New Jersey." *Loki Brands, LLC v. Platkin*, No. CV 24-9389 (ZNQ) (TJB), 2024 WL 4457485, at *4 (D.N.J. Oct. 10, 2024).  Several companies whose products involved some manner of out-of-state roots filed suit, arguing in part that the New Jersey law violated the dormant Commerce Clause.  The district court enjoined enforcement of the relevant provisions of New Jersey law because they constituted "differential treatment between in-state and out-of-state interests

---

[5] The State accuses Plaintiffs of not "want[ing] to comply with the health-and-safety regulations that Ohio deemed necessary for the marijuana program" and "seek[ing] to be unregulated and unfettered by such duties to the public." (Doc. No. 56 at 11).  But the State does not offer any evidence to support its speculation, and it is undisputed that none of the Plaintiffs could become licensed to sell their products – and thus become subject to those health and safety regulations – because Ohio currently is not accepting applications for such licenses while it works to revamp its regulations to comply with the requirements of Senate Bill 56.

favor[ing] New Jersey hemp companies over out-of-state competitors . . . [and] deliberately alter[ed] the stakes for out-of-state hemp producers by subjecting them to civil and criminal liability." *Id.* at *10.

Based on the record before me, I find that Plaintiffs have established there is a strong likelihood that they will succeed on the merits of their dormant Commerce Clause claim.

As I did previously, I also conclude Plaintiffs have adequately alleged they will suffer irreparable harm in the absence of preliminary injunctive relief because a finding that a plaintiff established a strong likelihood of success on the merits of an alleged constitutional violation "mandates" a finding of irreparable harm.[6] *A.C.L.U. of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd sub nom. McCreary Cnty., Ky. v. A.C.L.U. of Ky.*, 545 U.S. 844, (2005) (citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976)).

And the remaining factors weigh in favor of injunctive relief as well because, as the Sixth Circuit has held "'no cognizable harm results from stopping' the conduct, and it's 'always in the public interest to prevent' constitutional violations." *Churchill Downs Tech. Initiatives Co. v. Michigan Gaming Control Bd.*, 162 F.4th 631, 642 (6th Cir. 2025) (quoting *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021)).[7]

---

[6]  Defendants renew their argument that I may not grant Plaintiffs' motion because enjoining duly enacted state statutes causes irreparable harm.  (Doc. No. 56 at 13).  (*See also* Doc. No. 12 at 3).  But this principle of law must give way when the challenged statute is unconstitutional. *See Does v. Whitmer*, No. 22-CV-10209, 2025 WL 1428243, at *5 (E.D. Mich. May 19, 2025) ("The Supreme Court has recognized that enjoining a state statute, by way of a preliminary injunction, can constitute irreparable harm unless the statute is unconstitutional.") (citing *Abbott v. Perez*, 585 U.S. 579, 602 (2018)).

[7]  After acknowledging it has no evidence that Plaintiffs' products pose a specific public safety risk, the State claims that granting Plaintiffs' motion "ensures that poisonings will continue." (Doc. No. 56 at 12 n.4) (emphasis added).  Hyperbole aside, Defendants have other tools in hand to protect public health and safety without impermissibly favoring in-state companies over out-of-state companies.

Finally, Plaintiffs argue that injunctive relief should extend to their "distributors, retailers, common carriers, and consumers . . .because adverse action against third-parties based upon their possession, sale, distribution, or consumption of plaintiffs' products would crater the market for plaintiffs' products." (Doc. No. 69 at 17). (*See also* Doc. No. 41 at 11-14). No Defendant offered any opposition to this requested relief. While I believe protections for those identified non-parties are implicit, I extend entry of injunctive relief to third parties who possess, sell, distribute, or consume Plaintiffs' products.

## IV. CONCLUSION

For the reasons stated above, I grant Plaintiffs' motion for a preliminary injunction. (Doc. No. 2). Defendants, and any persons working for or in concert with Defendants, are preliminarily enjoined from taking any criminal, civil, administrative, or regulatory enforcement action against the named Plaintiffs, or any person or organization possessing, selling, distributing, or consuming Plaintiffs' products, that involves, is dependent upon, or relates to the statutory definition of "hemp" as amended by Senate Bill 56, so long as the substance or product at issue is legally defined as "hemp" or a hemp-derived product under federal law.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

9