**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **TITAN LOGISTICS GROUP LLC, ET AL.,** | **:** | **Case No. 3:26-cv-01300** |
| | **:** | |
| *Plaintiffs,* | **:** | **Judge Jeffrey J. Helmick** |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Magistrate Judge Darrell A. Clay** |
| **BETH TISCHLER, ET AL.,** | **:** | |
| | **:** | |
| *Defendants.* | **:** | |

---

**INTERVENOR STATE OF OHIO'S MOTION TO STAY PRELIMINARY
INJUNCTION PENDING APPEAL**

---

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

/s/ *Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*
*\*Lead Counsel*
MICHAEL A. WALTON (0092201)
ANN YACKSHAW (0090623)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3428
Tel: 614-466-1853 | Fax: 855-326-1696
Julie.Pfeiffer@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Ann.Yackshaw@OhioAGO.gov

*Counsel for the State of Ohio*

## INTRODUCTION & BACKGROUND

The General Assembly enacted S.B. 56, a comprehensive cannabis bill, in December 2025. Three months passed. Plaintiffs did not act. S.B. 56 took effect in March 2026. Plaintiffs did not act. Nearly three more months passed. During this time, S.B. 56's legality was unsuccessfully challenged three times in state courts by intoxicating hemp manufacturers and retailers. *See Fifty West Brewing Co., L.L.C. v. Canepa*, 2026-Ohio-972; *Saucy Seltzer v. DeWine*, No. 26CV002464 (Franklin C.P. March 20, 2026) (denying TRO), voluntarily dismissed (Apr. 6, 2026); *Strahm v. Yost*, No. 26AP377 (10th Dist. Apr. 29, 2026) (staying TRO), No. 26CV2693 (Franklin C.P. June 24, 2026) (subsequently recommending denial of preliminary injunction). Plaintiffs did not act. Only after an outlier state-court decision broke in their favor were Plaintiffs moved to seek preliminary relief in early June. *See North Fork Distrib.. I. LLC v. Wensinger*, No. 26CV312 (Sandusky C.P. May 14, 2026) (granting preliminary injunction), appeal pending, No. S26-24 (6th Dist.).

Despite Plaintiffs' six months of inaction and despite the fact that S.B. 56 had taken effect months before, this Court upended the status quo and granted a preliminary injunction putting portions of S.B. 56 on hold. *See generally* Doc. 76. The injunction should be stayed pending appeal. Alternatively, the injunction should be modified as set forth in Section B.2. *infra.* The State of Ohio is likely to succeed on appeal, and a stay would serve the public interest by preventing irreparable harm to Ohio consumers. The State of Ohio therefore requests a stay of the preliminary injunction pending appeal.

**LAW AND ARGUMENT**

**A. Standard Of Review**

When considering a motion for stay pending appeal, the Court considers "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). These factors are not each prerequisites to a stay pending appeal but are "interconnected considerations" to be balanced by the reviewing court. *Id*. Here, these factors favor the State.

**B. The State is likely to succeed on appeal.**

The State is likely to succeed on appeal for two independent reasons: (1) the Sixth Circuit will disagree with this Court's legally baseless conclusion that laches cannot apply to constitutional claims, and (2) the Sixth Circuit will find that the preliminary injunction entered here is fatally overly broad.

**1. Laches bars relief.**

This Court's refusal to apply laches was based on two faulty premises: (1) laches does not apply to requests for preliminary injunctive relief, and (2) laches cannot apply when a plaintiff alleges a constitutional injury. Because on-point precedent flatly contradicts both premises, the laches analysis will not survive appellate review

First, as explained in the State's opposition to the motion for preliminary injunction, laches can—and routinely does—bar the entry of preliminary injunctive relief for plaintiffs who wait too long to assert their rights. *Lyons v. City of Columbus*, 2020 U.S. Dist. LEXIS 108230, *15-16 (S.D. Ohio June 19, 2020) (Court denied preliminary injunction because Plaintiffs failed to act with extreme diligence and promptness in bringing their claims.); *NACCO Indus. v. Applica, Inc.*, 2006

U.S. Dist. LEXIS 91940 (N.D. Ohio Dec. 20, 2006) (applying laches and denying TRO when plaintiffs "waited until the eleventh hour to file a lengthy complaint and TRO with the court").

While acknowledging this line of cases, this Court nonetheless says it is "not convinced" that laches can apply to requests for preliminary injunctive relief based on constitutional violations. Doc. 76 at PageID 1444. But the United States Supreme Court has held that a "constitutional claim can become time-barred just as any other claim can." *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008). Under this rationale, the Sixth Circuit has affirmed denials of preliminary injunctive relief to plaintiffs asserting constitutional injuries based on the doctrine of laches. *See, e.g.*, *Kennedy v. Benson*, No. 24-1799, 2024 U.S. Dist. LEXIS 24584, at *5 (6th Cir. Sept. 27, 2024) (affirming denial of preliminary injunction based, in part, on laches despite plaintiff's assertion of constitutional injuries under the First and Fourteenth Amendments). Likewise, district courts within this circuit routinely apply laches to requests for preliminary injunctive relief when constitutional questions are at issue. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 831 F.3d 382, 393 (6th Cir. 2016) (noting that district court denied TRO based on laches before ruling on motions for summary judgment); *King v. Whitmer*, 505 F. Supp. 3d 720, 732 (E.D. Mich. 2020) (applying laches and denying motion for preliminary injunction seeking relief on various constitutional claims); *Lyons*, 2020 U.S. Dist. LEXIS 108230 at *17 (applying laches and denying motion for preliminary injunction seeking relief on First Amendment claim). Put simply, there is no laches exception for constitutional claims. And for all the reasons set forth in the State's opposition memoranda, the doctrine applies here. *See* Doc. 10 at PageID 812-14; Doc. 56 at PageID 1169-72.

Because this Court's laches analysis contravenes on-point precedent, it will not survive appellate review. This Court should therefore stay the preliminary injunction pending appeal.

## 2. The preliminary injunction entered here goes far beyond any discrimination against out-of-state entities identified by the district court.

Alternatively, the Court should stay or modify the preliminary injunction because it swept far too broadly. Federal courts lack the power to enjoin laws beyond any constitutional conflict. Injunctions "must … be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Gill v. Whitford*, 585 U.S. 48, 68 (2018) (citation omitted); *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 319 (1999) (limiting injunctions to the "relief … traditionally accorded by courts of equity"); *Labrador v. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring) ("[A] federal court may not issue an equitable remedy "more burdensome to the defendant than necessary to [redress]" the plaintiff's injuries." (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979))).

As applied to dormant commerce clause claims, these principles demand that federal courts enjoin only those portions of a statute that discriminate against interstate commerce. As the State explained in its opposition to the preliminary injunction, this means either leveling up or leveling down the discriminatory statute or regulation. *Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 569 (2015). Leveling up means extending the withheld benefit to out-of-state interests. Leveling down means withholding the benefit from both in- and out-of-state interests.

The preliminary injunction here far exceeds the discrimination identified by this Court. As the Court recognized at the TRO stage, the only portion of the marijuana regulatory scheme that differentiates between in-state and out-of-state products is Ohio Admin. Code 3796:6-3-01(C). *See* Doc. 76 at PageID 1445. Yet, rather than leveling up or leveling down that provision, as dormant commerce clause precedent requires, the Court instead enjoined the State from enforcing large swaths of Senate Bill 56, *not* the regulatory provision it deemed discriminatory. The Court justified its injunction by referring to a purported "'four-step' dance interrelating" the Ohio Administrative

4

Code with Senate Bill 56. *Id.* at PageID 1446 (citing Doc. 69 at 15 n.1[1]). But the Court identified *no* portion of this four-step dance—other than Ohio Admin. Code 3796:6-3-01(C)—that permits in-state companies to sell intoxicating hemp while prohibiting out-of-state companies from participating in the same market.

Nor could it. The regulatory regime set up by S.B. 56, including its definitions of hemp and marijuana, is facially neutral regarding in-state and out-of-state companies. True, only holders of licenses issued by the Division of Cannabis Control may cultivate, process, and sell marijuana. But the State is permitted to favor incumbent license holders without running afoul of the dormant commerce clause. *See Truesdell v. Friedlander*, 80 F.4th 762, 772 (6th Cir. 2023). And with respect to applicants for new licenses, neither in-state nor out-of-state companies may apply because the Division of Cannabis Control has not yet completed the rulemaking process that will govern licensure under S.B. 56. *See* Makoski Aff. ¶ 26; Ohio Rev. Code §§ 3796.03 (authorizing the Division of Cannabis Control to adopt rules); 3796.09 (requiring applicants for cultivator or processor licenses to apply under rules adopted under 3796.03); 3796.10 (same for applicants for dispensary licenses). It is difficult to see how a licensing process that is not yet up and running discriminates against out-of-state entities.

At the end of the day, the Court pointed to one regulation—Ohio Admin. Code 3796:6-3-01(C)—as the source of out-of-state discrimination. Yet, it enjoined a facially neutral statute without finding that the statute, rather than the regulation, resulted in discrimination. The Court should therefore either stay its injunction or modify it to enjoin that provision only.

---

[1] It is unclear what the Court believes is the "four-step dance" Plaintiffs described. The entry that the Court cited for this point—Plaintiffs' reply at Doc. 69—contains no reference to a "four-step dance" on either page 15 or in footnote 1.

**C. The Remaining Factors Favor A Stay.**

For the reasons set forth above, the State is likely to prevail on the merits. As a result, the remaining stay-pending-appeal factors favor the State as well: the State always suffers irreparable harm when its lawful regulations are enjoined, *see Thompson v. DeWine*, 959 F.3d 804, 812 (6th Cir. 2020) (per curiam); no one will suffer any relevant harm by being made to comply with a lawful regulatory scheme; and the public interest is always served by "giving effect to the will of the people by enforcing the laws they and their representatives enact." *Id*. A stay would prevent irreparable harm to Ohio, serve the public interest, and protect Ohio consumers. These concerns are particularly acute here, where the record evidence shows that unfettered access to intoxicating hemp products increased THC poisonings in children by more than 300%. Additionally, the public interest favors a stay. Indeed, it is always "in the public interest that [this Court] give effect to the will of the people by enforcing the laws . . . their representatives enact." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020).

This Court's decision has also invited confusion and chaos into Ohio's marijuana markets. Between March 20, when S.B. 56 took effect, and June 15, when this Court entered a temporary restraining order, all intoxicating cannabis products were classified as marijuana and sold in dispensaries. These changes were widely reported in the news media at the time.[2] Businesses sold off inventory in preparation for S.B. 56's effective date. The initial unsuccessful challenges to S.B. 56 were also widely reported.[3] For two months, the cannabis industry and the public proceeded

---

[2] *See, e.g.*, Megan Henry, New Ohio law banning intoxicating hemp products, THC and CBD beverages takes effect, Ohio Capital Journal, *available at* https://ohiocapitaljournal.com/2026/03/20/new-ohio-law-banning-intoxicating-hemp-products-thc-and-cbd-beverages-takes-effect/ (last accessed July 13, 2026); Jeremy Nobile, Ban on intoxicating hemp products, THC drinks takes effect, Crain's Cleveland Business, *available at* https://www.crainscleveland.com/cannabis/ccl-thc-beverage-ban-20260320/ (last accessed July 13, 2026).

[3] Jessie Balmert, Judge rejects attempt to block Ohio law on THC drinks, hemp products,

under the assumption that all cannabis products in Ohio must be sold through the marijuana program.

The Court's TRO, and now the preliminary injunction, upended that status quo and permitted Plaintiffs to sell intoxicating cannabis products outside the dispensary environment. Untested, untracked, and unlabeled intoxicating cannabis products are available once more for purchase by children. Additionally, Ohio consumers are left to wonder which cannabis products are legal. How are they to know which THC seltzers are covered by the preliminary injunction?[4] How are law enforcement agencies? How are gas stations, convenience stores, wine shops, and other retail establishments? The people of Ohio trusted the General Assembly to create a comprehensive regulatory scheme for marijuana that applied health-and-safety regulations statewide. Instead, the preliminary injunction thrusts a patchwork intoxicating-hemp market upon the State that will harm consumers, businesses, and law enforcement.

## CONCLUSION

For these reasons, the Court should stay the preliminary injunction pending appeal. Alternatively, the Court should modify its preliminary injunction and enjoin *only* the specific regulation it found to discriminate against out-of-state companies and products: Ohio Admin. Code 3796:6-3-01(C).

---

Cincinnati Enquirer https://www.cincinnati.com/story/news/politics/2026/03/19/new-lawsuit-asks-to-block-ohio-ban-on-thc-drinks-hemp-products/89224264007/?gnt-cfr=1&gca-cat=p&gca-uir=true&gca-epti=z114728p001750l003250c001750e1176xxv114728d--67--b--67--&gca-ft=207&gca-ds=sophi (last accessed July 13, 2026); WSYX Staff, Franklin County judge declines to halt Ohio intoxicating hemp restrictions, ABC6, *available at* https://abc6onyourside.com/news/local/franklin-county-judge-declines-to-halt-ohio-intoxicating-hemp-ban-thc (last accessed July 13, 2026).
[4] Katie Millard, Ohio brewery owner claims cannabis law 'makes no sense,' NBC4, *available at* https://www.nbc4i.com/news/politics/ohio-brewery-owner-claims-cannabis-law-makes-no-sense/ (last accessed July 13, 2026).

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

/s/ *Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)*
*\*Lead Counsel*
MICHAEL A. WALTON (0092201)
ANN YACKSHAW (0090623)
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3428
Tel: 614-466-1853 | Fax: 855-326-1696
Julie.Pfeiffer@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Ann.Yackshaw@OhioAGO.gov

*Counsel for the State of Ohio*

## CERTIFICATE OF SERVICE

I certify that on July 14, 2026, the foregoing was filed via the Court's electronic filing system. Notice of this filing was sent via the Court's electronic filing system to all counsel who have entered appearances.

/s/ *Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General

8